Scott S. LAVOIE

v.

**NORTH EAST KNITTING, INC. et al.**

No. 2006–51–A.

Supreme Court of Rhode Island.

April 3, 2007.

Mark W. Freel, Esq., Providence, for Plaintiff.

Mary C. Dunn, Esq., Providence, for Defendant North East Knitting, Inc.

Raymond A. Marcaccio, Esq., Providence, for Defendant Rosalie DaRosa.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The plaintiff, Scott S. Lavoie (plaintiff), appeals the Superior Court's grant of summary judgment in favor of the defendants, North East Knitting, Inc. (NEK) and Rosalie DaRosa (collectively defendants). This case came before the Supreme Court for oral argument on January 22, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument. For the reasons set forth below, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

In 1986, plaintiff's father, Louis Lavoie (Louis), and DaRosa, who were coworkers at a bankrupt textile manufacturing company, had a vision. As the doors to their defunct employer's business closed, they dreamed of purchasing its equipment and inventory to establish a new textile company. With the help of investors Robert Erdon and Robert Primeau, they formed

NEK, a Rhode Island corporation, and appointed Louis as its president and DaRosa as its vice president. DaRosa currently serves as the company's president.

At the corporation's inception, Louis contributed funds and expertise to become the majority shareholder with 51 percent of the stock. Primeau invested $100,000 and received 22.5 percent of the stock, and Erdon invested $60,000 and received 13.5 percent of the stock. Salesman Peter Izzi was awarded 8 percent of the stock for his expertise, and DaRosa received the remaining 5 percent in consideration of her $25,000 contribution. This arrangement lasted for about three years, until DaRosa expressed dissatisfaction with her 5 percent share. In response, Louis raised the issue at a NEK shareholders' meeting at which, upon unanimous vote, the shareholders awarded DaRosa a $200,000 bonus with which she could purchase 100 shares of NEK stock from Primeau.

In 1993, NEK shareholders entered into a shareholders' agreement, which provided that, upon a shareholder's death, his or her stock would be sold back to the company. The agreement also granted Louis the exclusive right to transfer his stock to his sons, plaintiff and David Lavoie (David).[1] However, Louis never exercised this provision before his death in December 2001. In accordance with the shareholders' agreement, his shares were sold back to NEK and the proceeds were bequeathed to his wife, Elizabeth Lavoie, pursuant to a will Louis executed in 1990.

This litigation commenced in 2002, when plaintiff and David filed suit against NEK seeking further information about the company's assets to carry out their fiduciary duties as coexecutors of Louis's estate. Two months after the initial lawsuit was

---

1. Initially a plaintiff, David Lavoie did not oppose DaRosa's motion for summary judgment below and is not a party on appeal.

filed, plaintiff and David amended their complaint to add DaRosa as a defendant, alleging that she unduly influenced Louis not to transfer his stock to them. The complaint also sought a declaratory judgment as to how the shares should be valued and requested an order instructing NEK to resume dividend payments to Louis's estate. On July 29, 2002, the Superior Court ordered that the shares be valued at the time of Louis's death.

The plaintiff and David thereafter moved to file a second amended complaint, which the court granted on December 2, 2003. This second amended complaint against DaRosa—filed by plaintiff and David in their capacity as executors of Louis's estate and in their individual capacities—alleged that, "[a]s a direct and proximate result of DaRosa's adulterous relationship with the decedent, Louis Lavoie, DaRosa was able to manipulate the decedent and, by use of undue influence, caused or contributed to the unnatural disposition of Louis Lavoie's property during his lifetime." Specifically, they alleged that DaRosa used her relationship with Louis to prevent him from conveying to his sons, before his death, his stock or company treasury stock that he otherwise intended to convey to them.

On June 17, 2005, defendants moved for summary judgment on the grounds that there was no evidence that DaRosa unduly influenced Louis. In opposition to defendants' motion, plaintiff cited the following facts:

According to plaintiff, upon hiring him, Louis informed plaintiff that DaRosa was his "girlfriend" and that he should not accept the employment offer if he disagreed with their relationship. For years, Louis and DaRosa traveled together, often sharing a hotel room and acting like a married couple. Louis frequently informed plaintiff of his travel plans with DaRosa and asked plaintiff to cover for him so his wife would not learn of his adulterous relationship. Louis and DaRosa also openly held hands, kissed, hugged, and exchanged "I love yous."

The plaintiff also asserted that his father repeatedly assured him that someday he would run the family business and that he intended to transfer his shares of NEK stock to plaintiff. Despite these assurances, Louis never transferred NEK stock to plaintiff. The plaintiff contends that DaRosa used her relationship with Louis to unduly influence him, causing him to fail to transfer stock to plaintiff.

A hearing on defendants' summary-judgment motion was held on August 16, 2005, and a judgment granting the motion entered on October 26, 2005. The plaintiff timely appealed.

## II

### Analysis

On appeal, plaintiff argues that the motion justice erred by granting defendants' summary-judgment motion. The plaintiff contends that undue influence is a fact-intensive claim and, therefore, inherently is inappropriate for summary judgment. The defendants counter that plaintiff failed to make out a prima facie case of undue influence.

### A

### Standard of Review

"This Court reviews a grant of summary judgment *de novo*, applying the same standards as the motion justice." *Smiler v. Napolitano*, 911 A.2d 1035, 1038 (R.I.2006) (citing *Andreoni v. Ainsworth*, 898 A.2d 1240, 1241 (R.I.2006)). Summary judgment is proper if no genuine issues of material fact are evident from "the pleadings, depositions, answers to interrogato-

ries, and admissions on file, together with the affidavits, if any" and, in addition, the motion justice finds that the moving party is entitled to prevail as a matter of law. Super. R. Civ. P. 56(c). Therefore, summary judgment should enter "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (construing the substantially similar federal rule). "[C]omplete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.

## B

### North East Knitting

■ Although plaintiff's second amended complaint did not name NEK as a defendant in this matter, NEK signed on to DaRosa's summary judgment motion. Inexplicably, NEK was permitted to move for summary judgment in an action in which it was not a party. Nevertheless, summary judgment entered in favor of NEK and DaRosa. The plaintiff, in his notice of appeal, named both NEK and DaRosa and both parties briefed this Court. Any error the motion justice committed in permitting NEK to move for summary judgment was harmless. The plaintiff has failed to state any claim against NEK, let alone any claim upon which relief may be granted. Therefore, we affirm the Superior Court's summary judgment grant with respect to NEK.

## C

### DaRosa

The plaintiff's sole allegation is that DaRosa unduly influenced Louis to refuse to transfer stock to plaintiff during Louis's lifetime. On appeal, plaintiff contends that the motion justice failed to appreciate the materiality of the disputed evidence with respect to undue influence.

At the outset, we note that plaintiff has failed to provide this Court with a transcript of the motion justice's bench decision, but, because this Court's review is *de novo,* the omission is not fatal to plaintiff's appeal. We pause, however, to remind litigants that failure to order a transcript is "risky business." *Sentas v. Sentas,* 911 A.2d 266, 270 (R.I.2006). Without a transcript of the bench decision in this case we are unable to conclude whether the motion justice granted summary judgment because he found that there were no genuine issues of material fact or whether he concluded that plaintiff simply could not establish a prima facie case for undue influence. To the extent that the motion justice based his decision upon finding there were no genuine issues of material fact, we affirm summary judgment on grounds other than those relied upon by the motion justice. *See Ahlburn v. Clark,* 728 A.2d 449, 452 (R.I.1999) (this Court may "affirm a judgment on grounds not actually relied upon by the trial court to justify its ruling"). Without passing on whether there were genuine issues of material fact, we hold that summary judgment was proper because plaintiff cannot sustain his claim because undue influence is not a cause of action at law entitling him to damages.

■ Undue influence long has been recognized in equity as a defense to or a means of challenging the validity of a will, deed, or contract. *See Tinney v. Tinney,* 770 A.2d 420, 435 (R.I.2001) (action to rescind a deed on grounds of undue influence); *Caranci v. Howard,* 708 A.2d 1321, 1322 (R.I.1998) (action to set aside a will on grounds of undue influence); *Stockett v. Penn Mutual Life Insurance Co.,* 82 R.I.

172, 174, 175, 106 A.2d 741, 742, 743 (1954) (action to rescind a contract on grounds of undue influence). In such cases, equity provides an action for restitution or rescission to cure the dominant party's wrongful "substitution of [his or her will] for the free will and choice [of the subservient party]." *Filippi v. Filippi*, 818 A.2d 608, 630 (R.I.2003) (quoting *Tinney*, 770 A.2d at 437–38); *see also* 2 Dan B. Dobbs, *Dobbs Law of Remedies*, § 10.3 at 657 (2d ed.1993) (noting that "[t]he victim of undue influence is entitled to the same battery of restitutionary remedies as the victim of fraud or other wrongdoing").

■ Although undue influence is well recognized in equity, it is equally established that "there is no tort of undue influence, and there is no right to damages, as distinct from restitution, because of such influence." 2 Dobbs, § 10.3 at 658; *see also Cyr v. Cote*, 396 A.2d 1013, 1019 n. 7 (Me.1979) ("[U]ndue influence and duress, traditionally considered wrongful under well-established precedent * * * are simply the means by which the alleged interference occurred."); Restatement (Second) *Contracts* ch. 7, topic 2, introductory note at 474 (1993) ("Since duress and undue influence, unlike deceit, are not generally of themselves actionable torts, the victim of duress or undue influence is usually limited to avoidance and does not have an affirmative action for damages.").

■ In this case, even if the facts plaintiff has alleged are true, summary judgment must be entered against him because he cannot establish an essential component of his case, namely that he is entitled to damages at law. The plaintiff has attempted to utilize a tool recognized only in equity as the sole basis for his tort action against DaRosa. Unfortunately for plaintiff, the law is clear: undue influence is not an independent tort, and, thus, compensatory damages are not available. 2 Dobbs, § 10.3 at 658. Although the facts, taken in the light most favorable to plaintiff, conceivably could lead a finder of fact to find that DaRosa's acts were wrongful, her undue influence cannot, by itself, be deemed tortious. *See id.*, § 10.1 at 632.

The difficulty for plaintiff is that an action in equity in this case would be unavailing. Had plaintiff alleged that DaRosa unduly influenced Louis to affirmatively execute a will, a deed, or a contract, an action in equity would be available to set aside the transaction. However, his sole allegation is that DaRosa unduly influenced his father not to do what he otherwise intended to do, and, therefore, there is no operative transaction here for equity to set aside. Nevertheless, we are not prepared to recognize undue influence as an independent tort based only upon the facts of this case.

Because undue influence is not a tort and is only remediable by an action in equity, the plaintiff cannot prevail as a matter of law.

### Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed. The record shall be remanded to the Superior Court.

Justice ROBINSON did not participate.