June 21, 2018

**Supreme Court**

No. 2016-331-Appeal.
(PC 08-7549)

Moises Pineda                  :

v.                :

Chase Bank USA, N.A., et al.      :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Moises Pineda          :

v.               :

Chase Bank USA, N.A., et al.      :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**    The plaintiff, Moises Pineda (Pineda), appeals from a Superior Court judgment granting the motion of the defendant, Chase Bank USA, N.A. (Chase), for summary judgment with respect to all claims asserted by Pineda against Chase. This matter came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and after reviewing the record, we conclude that cause has not been shown and proceed to decide the appeal at this time. For the reasons set forth herein, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

In 2008, Pineda attempted to refinance loans secured by mortgages on two properties that he owned in Providence. During the refinance proceedings, Pasquale Scavitti III (Scavitti), an attorney, acted as the settlement agent.[1] Scavitti and Pineda had been acquaintances, and in 2006, Scavitti assisted Pineda with a previous refinancing for those same two properties. It is

---

[1] Scavitti is now disbarred.

undisputed that in connection with Pineda's 2008 refinancing, Scavitti defalcated funds disbursed by Chase that were intended to satisfy promissory notes secured by mortgages on Pineda's two properties.

On November 26, 2008, Pineda filed a complaint in Superior Court naming both Chase and Scavitti as defendants.[2] Pineda claimed that Chase agreed to issue him two new loans, each in the amount of $195,000, to pay promissory notes secured by mortgages on the properties,[3] but that Scavitti, whom Chase engaged as its closing agent, converted the loan proceeds for his own use and failed to disburse them. Specifically, Pineda alleged breach of fiduciary duty, civil liability for a crime pursuant to G.L. 1956 § 9-1-2, breach of contract, conversion, and unjust enrichment. Subsequently, Chase moved for summary judgment. Chase contended that it could not be held liable for Scavitti's tortious conduct under a theory of respondeat superior.

At the hearing on the motion for summary judgment, Chase maintained that summary judgment was proper because Scavitti was not Chase's attorney during the closing and therefore was not an agent of Chase. In the alternative, Chase contended that, even if Scavitti was Chase's attorney, Scavitti's defalcation of the loan funds was not within the scope of any alleged agency relationship with Chase. Pineda, on the other hand, argued that Chase was liable for Scavitti's actions because Chase gave Scavitti the authority to receive and disburse the loan funds, and Scavitti's malfeasance was within that authority.

In his bench decision, the hearing justice found that there was a genuine issue of material fact regarding whether Scavitti was acting as an agent of Chase at the time he absconded with the loan funds. However, the hearing justice ultimately determined that summary judgment was

---

[2] Pineda later amended his complaint to add four additional defendants: The Bank of New York, Countrywide Servicing L.P., MERS, Inc., and New Century Mortgage Corporation.
[3] Significantly, Chase represented at oral argument that it has canceled the promissory notes and discharged both mortgages.

- 2 -

appropriate because, even if Scavitti were an agent of Chase, there was no genuine issue of material fact as to whether Scavitti's conduct was within the scope of the purported agency relationship with Chase. Specifically, the hearing justice relied on the Restatement (Second) *Agency* § 228(1)(c) at 504 (1958) for the proposition that a servant's conduct is only considered within the scope of an agency relationship for respondeat superior purposes if "it is actuated, at least in part, by a purpose to serve the master." He concluded that "there is no evidence, and none has been submitted by [Pineda], that the conduct of Mr. Scavitti would have been in any way, at least in part, for the purpose of serving the master, even if Chase was the master."

Following the entry of summary judgment in favor of Chase, Chase filed a motion for the entry of final judgment under Rule 54(b) of the Superior Court Rules of Civil Procedure, to which Pineda assented. Final judgment was entered on January 29, 2016, and Pineda timely appealed.

## II

### Standard of Review

This Court reviews a hearing justice's grant of a motion for summary judgment *de novo*. *Fogarty v. Palumbo*, 163 A.3d 526, 532 (R.I. 2017). In our review, we "employ[] the same standards and rules used by the hearing justice." *Tarro v. Checrallah*, 60 A.3d 598, 601 (R.I. 2013) (quoting *Great American E & S Insurance Co. v. End Zone Pub & Grill of Narragansett, Inc.*, 45 A.3d 571, 574 (R.I. 2012)). "We will affirm a lower court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Great American E & S Insurance Co.*, 45 A.3d at 574). "Summary judgment is proper if no genuine issues of material fact are evident from 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' and, in addition, the motion justice finds that the moving party is entitled to prevail as a matter of law." *Lavoie v. North East Knitting, Inc.*, 918 A.2d 225, 227-28 (R.I. 2007) (quoting Super. R. Civ. P. 56(c)). "[T]he nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Great American E & S Insurance Co.*, 45 A.3d at 574 (quoting *Narragansett Improvement Co. v. Wheeler*, 21 A.3d 430, 438 (R.I. 2011)). "Therefore, summary judgment should enter 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *.'" *Lavoie*, 918 A.2d at 228 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III

### Analysis

Pineda raises several issues on appeal—namely, whether: (1) there is an issue of fact as to whether Scavitti's defalcation was within the scope of his agency relationship with Chase; (2) the consequences of Scavitti's defalcation should be borne by Chase; (3) the hearing justice's grant of summary judgment was proper; and (4) the dismissal of the case violated Pineda's constitutional right to a jury trial.

### A

### Agency Relationship between Scavitti and Chase

At the outset, we note that "[a]n agency relationship exists when: (1) the principal manifests that the agent will act for him, (2) the agent accepts the undertaking, and (3) the parties agree that the principal will be in control of the undertaking." *Credit Union Central Falls v.*

*Groff*, 966 A.2d 1262, 1268 (R.I. 2009). In his decision, the hearing justice concluded that a genuine issue of material fact existed with respect to whether Scavitti was an agent of Chase. This finding is consistent with our previous conclusions that "the existence of an agency relationship sufficient to allow vicarious liability to attach * * * is an issue of fact[.]" *McNulty v. Chip*, 116 A.3d 173, 185 (R.I. 2015).

After reviewing the record *de novo*, we concur with the hearing justice's conclusion that a genuine issue of material fact existed with respect to the question of agency. During his deposition, Scavitti discussed his relationship with Chase in regard to the real estate closing proceedings for Pineda's two properties. Scavitti testified that Pineda selected Scavitti's office to serve as the settlement agent in the closing proceedings. In his capacity as settlement agent, Scavitti testified that he received a package from Chase containing information pertinent to the closing, including the closing instructions. Scavitti also testified that his office signed the settlement statement as the settlement agent, prepared a title commitment binder and sent it to Chase, sent wiring instructions and additional documents to Chase, and received authorization from Chase to close the transaction. Scavitti also testified that the funds provided by Chase were wired to his office's bank account. In addition, Scavitti testified that it was Pineda who paid him for his work.

Pineda, during his deposition, testified that when he decided to refinance his properties in 2008, he went to Scavitti's office and completed the loan application. In addition, Pineda completed and signed a form entitled "Rhode Island Disclosures," on which the box indicating "I DO want the Lender to choose a title attorney" was checked, but then crossed out, and the box indicating "I DO NOT want the Lender to choose an attorney" was checked, with Scavitti's name and contact information provided. Pineda testified that he did not know what the

document was because he could not read English, but agreed that his signature was inscribed at the bottom of the form.

In the present case, as in *Groff*, we are again wading in "the murky ethical waters of what is undoubtedly a common practice at real estate closings [and] we are reluctant to dive in" and decide the issue of agency at the summary-judgment stage. *Groff*, 966 A.2d at 1270, 1275 (affirming summary judgment on other grounds, but determining that a genuine issue of material fact existed as to whether an attorney who embezzled loan proceeds at a real estate closing, while acting as a closing agent, had an attorney-client relationship, and thus, an agency relationship, with the lender or the borrower); *see Baker v. ICA Mortgage Corporation*, 588 A.2d 616, 617-18 (R.I. 1991) (vacating a grant of summary judgment because a question of fact existed as to whether an attorney, who failed to apply loan proceeds to a mortgage, represented the mortgagee or was an agent of the mortgagor). Thus, we concur with the hearing justice's finding that a genuine issue of material fact existed as to whether Scavitti was an agent of Pineda or Chase.

**B**

**Scavitti's Malfeasance and the Scope of His Alleged Agency Relationship with Chase**

The hearing justice did not conclude his analysis upon finding that a genuine issue of material fact existed with respect to the question of agency. Instead, he proceeded to the scope-of-employment element of the agency test and decided that summary judgment was appropriate. On appeal, Pineda argues that the hearing justice erred in finding that, in addition to the elements needed to establish agency, he was also required to show that Scavitti's defalcation benefited Chase. Chase maintains, however, that the hearing justice's inquiry was properly focused on whether Scavitti acted within the scope of his alleged agency relationship with Chase when he

stole the loan funds for his own benefit. Chase further contends that, because it is undisputed that Scavitti acted in his own interest, Pineda's claim must fail.

In applying the Restatement (Second) *Agency* approach, we have held that "[a]n employer is liable for the acts of an employee when the employee is acting within the scope of his or her employment." *Vargas Manufacturing Co. v. Friedman*, 661 A.2d 48, 53 (R.I. 1995) (citing Restatement (Second) *Agency* §§ 140, 228). In making his scope-of-employment determination, the hearing justice in the present case relied on the Restatement, which provides that the conduct of a servant is within the scope of employment if:

> "(a) it is of the kind he is employed to perform;
> "(b) it occurs substantially within the authorized time and space limits;
> "(c) it is actuated, at least in part, by a purpose to serve the master, and
> "(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." Restatement (Second) *Agency* § 228 at 504.

The hearing justice found no disputed facts pertaining to the third prong of the scope-of-employment test. An act is considered within the scope of an agency relationship only if the servant is at least partly motivated by his or her intent to serve the master. *Id.* Moreover, when examining the third prong, the Restatement provides that "[i]t is the state of the servant's mind which is material." *Id.* at § 235 cmt. *a* at 520. Therefore, in order to determine Scavitti's intent, we must look to his manifestations and the attendant circumstances. *Id.*

After looking at the evidence presented, the hearing justice determined that Scavitti's conduct in converting the loan funds was not motivated, in any part, by a purpose to serve Chase. It was, in fact, Scavitti's uncontroverted testimony that his defalcation of the loan funds was in no way motivated by a purpose to serve Chase. During his deposition, Scavitti was asked "[W]hen you decided to take the loan proceeds and use it for a purpose other than what's set

forth in the closing instructions from Chase, what interests of Chase were you advancing, if any?"—to which Scavitti responded, "None." Moreover, Scavitti admitted that Chase's closing instructions directed him to use the funds received from Chase to pay off the prior mortgage that preceded Chase's loan, yet Scavitti failed to make that payment and acknowledged the fact that the "misapplication of the[] funds" did not benefit Chase. Thus, Scavitti's defalcation was "so different from the act authorized that it [was] not within the scope of the employment" or the purported agency relationship. Restatement (Second) *Agency* § 228 cmt. *d* at 505. Moreover, Scavitti's conduct was "clearly inappropriate" and "unforeseeable in the accomplishment of the authorized result." *Id.* at § 231 cmt. *a* at 513. Additionally, Scavitti's malfeasance caused Chase to not be placed in the first lien position on the property; therefore, instead of benefiting Chase, arguably his actions injured Chase. *See Burke v. St. Pierre*, 642 A.2d 671, 672 (R.I. 1994) (concluding that the servant's actions were outside the scope of employment, rendering summary judgment proper because the servant acted without authorization from the master and "in direct contravention of company policy").

As the moving party, Chase established that no genuine issue of material fact existed in regard to whether the alleged servant, Scavitti, acted within the scope of the alleged agency relationship and with the purpose of serving the alleged master, Chase. At that point, the burden shifted to Pineda to prove the existence of a disputed issue of material fact. *See Estate of Giuliano v. Giuliano*, 949 A.2d 386, 391 (R.I. 2008) (concluding that once "the movant * * * establish[es] that there exists no genuine dispute with respect to the material facts of the case * * * [t]he nonmovant must, by competent evidence, prove the existence of a disputed issue of material fact"). Pineda contends that the record before the Superior Court included evidence that there was a disputed issue of material fact regarding whether Chase benefited from Scavitti's

tortious conduct. Specifically, he asserts that Chase benefited from Scavitti's actions by receiving "two prima facie valid recorded mortgages upon the [p]laintiff's realty, [and] two prima facie valid negotiable promissory notes held by * * * Chase * * * with a combined face value of approximately $400,000[]." Additionally, he maintains that Chase benefited by receiving several installments of payments on the notes from Pineda subsequent to the closing of the loans. Furthermore, he contends that Chase accepted and held the payments under the notes in addition to other payments made before and at the closing.

However, Pineda failed to raise these alleged issues of fact before the hearing justice, thereby waiving this argument. *See In re Shy C.*, 126 A.3d 433, 434, 435 (R.I. 2015) (noting that the raise-or-waive rule is a "long adhered to" and "important jurisprudential principle" providing that "an issue that has not been raised and articulated previously at trial is not properly preserved for appellate review") (quoting *State v. Gomez*, 848 A.2d 221, 237 (R.I. 2004)). Moreover, Pineda did not provide any evidence, notwithstanding the benefits that he now alleges Chase received, that Scavitti's defalcation of the loan funds was motivated in any part by a purpose to serve Chase. Therefore, when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,]" summary judgment is appropriate. *Lavoie*, 918 A.2d at 228 (quoting *Celotex Corp.*, 477 U.S. at 322). Accordingly, we are of the opinion that the hearing justice's grant of summary judgment in Chase's favor was proper.

## C

### Pineda's Right to a Jury Trial

Pineda also raises the issue of whether the Superior Court's grant of summary judgment violated his constitutional right to a jury trial. Pineda fails to assert any supporting arguments or provide relevant caselaw for this right-to-a-jury-trial claim. Moreover, in light of our

- 9 -

determination that Pineda failed to show an issue of fact as to whether Scavitti was acting within the scope of any alleged agency relationship with Chase, even when viewing the evidence most advantageously to Pineda, Chase is entitled to judgment as a matter of law. We conclude, therefore, that Pineda's right to a jury trial was not violated by the hearing justice's grant of summary judgment in favor of Chase.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the final judgment on appeal. The papers may be returned to the Superior Court.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Moises Pineda v. Chase Bank USA, N.A., et al. |
| **Case Number** | No. 2016-331-Appeal. (PC 08-7549) |
| **Date Opinion Filed** | June 21, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Douglas A. Pettis, Esq. |
| | For Defendants: <br><br> Matthew J. Libby, Esq. <br> Jennifer J. Normand, Esq. |

SU-CMS-02A (revised June 2016)