May 1, 2020

CFS 915, LLC                    :

v.                              :

Unetixs Vascular, Inc., et al.  :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

CFS 915, LLC          :

v.          :

Unetixs Vascular, Inc., et al.          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The defendants, Unetixs Vascular, Inc. (Unetixs) and Criticare Technologies, Inc. (Criticare) (collectively Tenants), appeal from a Kent County Superior Court judgment for possession entered on July 25, 2018 in favor of the plaintiff, CFS 915, LLC (CFS), pursuant to the granting of CFS's motion for summary judgment.  This case first came before the Supreme Court for oral argument on April 4, 2019, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided.  After examining the written and oral submissions of the parties and after a thorough review of the record, we concluded that cause had indeed been shown and that this appeal should proceed to full briefing and argument.  Additionally, this Court directed the parties "to provide the Court with discussion of pertinent appellate decisions, if any, from other jurisdictions regarding:

> "(1) Whether notice to an assignor of a mortgage of the existence of an unrecorded lease on a property is sufficient to constitute notice to the assignee;
>
> "(2) Whether any such notice to an assignee is sufficient to overcome a mortgage's priority over unrecorded leases as outlined in statutes that provide that a mortgage has full priority over unrecorded conveyances and which statutes are silent on the issue of notice."

- 1 -

The case was heard on the full argument calendar on January 28, 2020.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The following facts are gleaned from the exhibits attached to CFS's memorandum in support of its motion for summary judgment and the Tenants' memorandum in opposition to CFS's motion for summary judgment.

On July 30, 2008, MCH Realty, LLC (MCH),[1] the then-owner of the property located at 125 Commerce Park Road, North Kingstown (the Property), entered into a lease agreement with Unetixs to lease the Property to Unetixs for a term of five years, with an option to renew the lease for an additional five years. On April 30, 2013, MCH and Unetixs agreed to amend the original lease to, among other things, reflect the exercise of the option to renew the lease term for an additional five years, which extended the lease term until July 30, 2018.

On May 16, 2013, MCH executed a mortgage deed to "DBS Bank Ltd, Bangalore Branch" (DBS) secured by its interest in the Property, which mortgage deed was recorded on May 21, 2013. On December 31, 2014, through a document entitled "Open-end Mortgage to Secure Present and Future Loans Under Chapter 25 of Title 34 of the General Laws, Assignment of Leases and Rents, Security Agreement, and Fixture Filing" (the mortgage), MCH and DBS amended the original mortgage so as to include its present terms.[2] This mortgage was recorded on January 30, 2015.

---

[1]    MCH was named as a defendant in this action. However, it is not a party to this appeal.

[2]    The mortgage indicates that MCH and DBS had amended the original mortgage two times prior to the December 31, 2014 amendment, once on June 26, 2013 and once on January 22, 2014.

On September 30, 2015, DBS assigned its interest in the mortgage to CFS. CFS recorded the assignment on October 5, 2015.

On April 6, 2016, MCH and Unitexs agreed to amend the lease agreement to extend the term of the lease until March 31, 2026 and to suspend Unitexs's obligation to pay rent until December 31, 2016. On the same date, MCH entered into an identical lease agreement with Criticare.[3]

On July 19, 2017, CFS, through its attorney, sent a letter to MCH notifying MCH of CFS's intent to foreclose on the mortgage and to hold a public auction to sell the Property. On October 4, 2017, CFS purchased the Property at the foreclosure sale and proceeded to record the foreclosure deed on December 18, 2017. Thereafter, on January 23, 2018, CFS sent a letter to MCH and "All Other Occupants" notifying them of the purchase and directing them to vacate the Property on January 31, 2018.

On February 1, 2018, CFS filed a complaint in Third Division District Court seeking to evict the Tenants and MCH from the Property. On May 24, 2018, the parties entered into a consent judgment granting the Tenants and MCH possession of the Property and requiring the Tenants to pay rent to CFS from October 4, 2017 until May 31, 2018 and throughout the pendency of any appeal. The consent judgment also expressly preserved CFS's right to appeal.

On the same date as the consent judgment entered, CFS filed an appeal to the Superior Court. On June 18, 2018, CFS moved for summary judgment in the Superior Court, and the Tenants objected. On July 10, 2018, after hearing the parties' oral arguments, the hearing justice issued a bench decision granting CFS's motion. Relying upon the language of G.L. 1956 §§ 34-

---

[3]     The lease agreement between MCH and Criticare is entitled "Second Amendment to Indenture of Lease Agreement" and purports to amend the original July 30, 2008 lease. It should be noted, however, that Criticare was not named as a lessee on the original lease.

25-2 and 34-25-10,[4] the hearing justice ruled that the mortgage was superior to the Tenants' unrecorded leases and that, therefore, the leases were extinguished upon foreclosure. He also found that, even if G.L. 1956 § 34-11-1 were applicable, the Tenants had "failed to show any genuine issue of material fact that CFS had notice or knowledge of any relevant conveyance prior to its acquisition of the mortgage from DBS Bank, an unrelated entity to CFS." On July 25, 2018, judgment for possession of the Property and costs entered in favor of CFS, and the Tenants timely appealed.

**II**

**Standard of Review**

"This Court reviews a hearing justice's grant of a motion for summary judgment *de novo*." *Pineda v. Chase Bank USA, N.A.*, 186 A.3d 1054, 1056 (R.I. 2018). Accordingly, when deciding whether summary judgment was appropriate, we (like the hearing justice) must determine whether "no genuine issue of material fact exists and [if] the moving party is entitled to judgment as a matter of law." *Cancel v. City of Providence*, 187 A.3d 347, 350 (R.I. 2018) (internal quotation marks omitted). In doing so, "[w]e view the evidence in the light most favorable to the nonmoving party." *Narragansett Indian Tribe v. State*, 81 A.3d 1106, 1109 (R.I. 2014). "[O]nce the moving party establishes the absence of a material factual issue, the party opposing the motion has an affirmative duty to establish either by affidavit or by other means the material issue of fact to be decided." *Mello v. Killeavy*, 205 A.3d 454, 459 (R.I. 2019) (internal quotation marks omitted). This Court's review of questions of statutory interpretation is also *de novo*. *Epic Enterprises LLC v. Bard Group, LLC*, 186 A.3d 587, 589 (R.I. 2018).

---

[4] The contents of these statutory provisions and of G.L. 1956 § 34-11-1 are described in Part III of this opinion, *infra*.

## III

## Analysis

On appeal, the Tenants' primary argument is that they retained the right to possess the Property despite the foreclosure and subsequent sale because the lease agreements were executed prior to the mortgage and CFS had actual notice of the leases. The Tenants contend that Rhode Island's statutory scheme governing the priority of conveyances is ambiguous as to whether the mortgage had priority over an unrecorded lease executed prior to the mortgage. Specifically, they argue that the phrase "except as otherwise hereinafter provided" that is included in § 34-25-2, which governs future loan mortgages, and § 34-25-10, which governs open-end mortgages, should be interpreted to mean that those two statutory sections must be read in light of the general recording statute, § 34-11-1. Alternatively, the Tenants argue that summary judgment was inappropriate because a genuine issue of material fact exists as to whether CFS had knowledge of the unrecorded leases.

We begin our analysis by noting that Criticare was not a party to either the original lease executed in July of 2008 or the first lease amendment in April of 2013. Criticare was not named as a lessee of the Property until the final amendment to the lease agreement in April of 2016, which occurred after the mortgage had already been executed, recorded, and assigned to CFS. As all of the Tenants' arguments are based on the fact that the leases were executed prior to the mortgage, these arguments are inapplicable to Criticare. Therefore, we hold that the hearing justice correctly granted summary judgment as to Criticare. We will next address the Tenants' arguments as they relate to Unetixs.[5]

---

[5] It is entirely possible that this case has become moot because the last amendment to the lease agreement that occurred prior to the execution of the mortgage expired on July 30, 2018. Nonetheless, we will proceed to address the merits of the Tenants' appeal.

The mortgage at issue is entitled "Open-end Mortgage to Secure Present and Future Loans Under Chapter 25 of Title 34 of the General Laws" as provided by § 34-25-13(a), which defines the term "mortgage" as used in § 34-25-10. Additionally, the Tenants do not contest that the mortgage meets the statutory requirements to qualify as an open-end mortgage. Therefore, our analysis will focus on § 34-25-10, which is entitled "Priority of open-end mortgages over encumbrances not previously recorded." It follows that we need not address § 34-25-2, which governs the priority of future loan mortgages as defined in § 34-25-5.

Section 34-25-10(a) provides:

> "The mortgage deed and the rights established therein, shall, to the extent of the loans secured thereby, and interest, taxes, insurance premiums and other obligations as secured thereby, *have full priority over all mortgages, liens and encumbrances which have not been recorded prior to the recording of the mortgage deed* except as otherwise hereinafter provided." (Emphasis added.)

Section 34-25-10(b) goes on to provide exceptions for certain writs of attachment, which exceptions both parties agree are not applicable to this case. Here, it is uncontested that the mortgage was recorded prior to the leases, which were never recorded. Therefore, if the priority of the mortgage is governed solely by § 34-25-10, whether or not CFS had notice of the unrecorded leases is irrelevant.

As stated above, the Tenants argue that the phrase "except as otherwise hereinafter provided" included in § 34-25-10(a) refers to the entirety of title 34, including § 34-11-1, the general recording statute governing the priority of conveyances. Section 34-11-1 provides, in pertinent part:

> "Every conveyance of lands, tenements or hereditament absolutely, by way of mortgage, * * * shall be void unless made in writing duly signed, acknowledged as hereinafter provided, delivered, and recorded in the records of land evidence in the town or city where the lands, tenements or hereditaments are situated; provided,

> *however, that the conveyance, if delivered, * * * as against * * **
> *those having notice thereof, shall be valid and binding though not*
> *acknowledged or recorded*." (Emphasis added.)

Accordingly, if § 34-11-1 qualifies as an exception to the priority rule stated in § 34-25-10(a), as the Tenants contend it does, then whether or not CFS's interest in the Property has priority over the unrecorded leases would hinge on whether CFS had notice of the prior leases.

In response, CFS contends that the phrase "except as otherwise hereinafter provided" in § 34-25-10(a) refers only to the exceptions listed in subsection (b) of section 10. We agree with CFS's interpretation. To interpret § 34-25-10(a) as the Tenants suggest would require this Court to ignore the plain and unambiguous language of the statute. *See Powers v. Warwick Public Schools*, 204 A.3d 1078, 1086 (R.I. 2019) (stating the well-established principle that "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings") (internal quotation marks omitted); *see also Barrett v. Barrett*, 894 A.2d 891, 898 (R.I. 2006) ("the words of a statute will be given their usual meaning") (internal quotation marks omitted). The word "hereinafter" has been defined as "[i]n a *following* part of this document, statement, or book." The American Heritage Dictionary of the English Language 822 (5th ed. 2011) (emphasis added). As such, it would be unreasonable to interpret the phrase "except as otherwise hereinafter provided" to refer to a completely different chapter of title 34—namely, chapter 11, which *precedes* chapter 25. Moreover, to read § 34-11-1 as an exception to the priority rule set forth in § 34-25-10(a) would render both subsections of § 34-25-10 meaningless. *See Ward v. City of Pawtucket Police Department*, 639 A.2d 1379, 1382 (R.I. 1994) ("Legislative enactments will not be interpreted as meaningless or nugatory if any other construction is reasonably possible.").

- 7 -

The Tenants also argue that to read § 34-25-10 in isolation would lead to an absurd result. In the Tenants' view, interpreting § 34-25-10 to mean that the priority of an open-end mortgage against any other conveyance is determined by which interest was recorded first, regardless of whether the party to the later conveyance had notice of the prior conveyance, would contravene Rhode Island's general recording statute, § 34-11-1, which does take notice into account. However, it is a well-accepted principle that "[w]hen a court is called upon to construe the provisions of coexisting statutes, we attempt to follow the rule of statutory construction that provides that statutes relating to the same or similar subject matter should be construed such that they will harmonize with each other and be consistent with their general objective scope." *Blanchette v. Stone*, 591 A.2d 785, 786 (R.I. 1991). Additionally, "[u]nless it appears that the legislature has intended to make the general act controlling, the general statute must yield to the specific one." 82 C.J.S. *Statutes* § 482 (Mar. 2020 Update) (footnote omitted). In our judgment, the General Assembly was entirely free to do what it has done in this instance—namely, to set forth in one statute a rule governing the priority of conveyances in general and then to set forth in a separate statute a specific rule that only applies to certain types of conveyances. We perceive nothing illogical in such a legislative choice.

The Tenants also argue that interpreting § 34-25-10 as CFS suggests would lead to an absurd result because it would "give special treatment to mortgages that provide for future advances without any justifiable reason for doing so." We have repeatedly stated that "[i]t is not for this Court to determine whether a statute enacted by the General Assembly 'comports with our [own] ideas of justice, expediency or sound public policy.'" *State v. LeFebvre*, 198 A.3d 521, 527 (R.I. 2019) (alteration in original) (quoting *State v. DiStefano*, 764 A.2d 1156, 1160 (R.I. 2000)). As such, if the General Assembly wished to provide greater protection for open-end mortgages

than for other forms of conveyances, it was completely free to do so; and this Court will interpret the clear and unambiguous language of the statute in accordance with its plain meaning. *See In re Kapsinow*, 220 A.3d 1231, 1235 (R.I. 2019) (declining to question legislative policy decisions when the language of the statute is clear and unambiguous).

As such, applying the clear and unambiguous language of § 34-25-10 to the facts of this case, we hold that CFS's interest in the mortgage was superior to the Tenants' interest in the unrecorded leases, regardless of whether or not CFS had notice of the prior leases. Consequently, when CFS purchased the Property at the foreclosure sale, all interests inferior to the foreclosed mortgage, including the unrecorded leases, were extinguished. *See* Restatement (Third) of Property (Mortgages) § 7.1 cmt. *a* (1997) ("[A] purchaser at a foreclosure sale not only acquires the previous owner's interests in the real estate, but a title free and clear of all other properly joined interests that were junior to the foreclosed lien."). Accordingly, we hold that the hearing justice correctly determined that no genuine issue of material fact remained and that CFS was entitled to judgment as a matter of law. Thus, the hearing justice's grant of summary judgment in favor of CFS was appropriate.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be returned to that tribunal.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | CFS 915, LLC v. Unetixs Vascular, Inc., et al. |
| **Case Number** | No. 2018-237-Appeal. (KD 18-549) |
| **Date Opinion Filed** | May 1, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Daniel E. Burgoyne, Esq.<br>For Defendants:<br><br>Stephen F. Del Sesto, Esq. |