July 1, 2020

**Supreme Court**

No. 2019-109-Appeal.
No. 2019-111-Appeal.
(PC 17-6074)

| Mauro Poletti | : |
| | |
| v. | : |
| | |
| Linda L. Glynn, alias, individually and as Trustee of the Linda L. Glynn Revocable Trust Agreement dated January 14, 2016, et al. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2019-109-Appeal.
No. 2019-111-Appeal.
(PC 17-6074)

Mauro Poletti                                 :

v.                                            :

Linda L. Glynn, alias, individually and as    :
Trustee of the Linda L. Glynn Revocable
Trust Agreement dated January 14, 2016,
et al.

Present:  Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The plaintiff, Mauro Poletti, appeals from a December

21, 2018 Providence County Superior Court judgment in favor of the defendant, Gonsalves-

Pastore Realty, LLC, d/b/a Century 21 (Gonsalves-Pastore), pursuant to a grant of Gonsalves-

Pastore's motion for summary judgment.[1]  On appeal, the plaintiff contends that the hearing justice

erred in determining that no genuine issue of material fact existed as to whether Gonsalves-Pastore

owed plaintiff a duty.  This case came before the Supreme Court for oral argument pursuant to an

order directing the parties to show cause why the issues raised in this appeal should not be

summarily decided.[2]  After examining the written and oral submissions of the parties and after a

thorough review of the record, we are of the opinion that cause has not been shown and that the

appeal may be resolved without further briefing or argument.

---

[1]     We begin by noting that this appeal pertains only to Gonsalves-Pastore.  The plaintiff's
claims against all other defendants remain pending in the Superior Court.

[2]     This case was heard remotely using the WebEx platform.

- 1 -

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The following facts are gleaned from the exhibits attached to Gonsalves-Pastore's memorandum in support of its motion for summary judgment and plaintiff's memorandum in opposition to Gonsalves-Pastore's motion for summary judgment.

On June 19, 2013, Linda Glynn, a licensed real estate agent and a named defendant in this case, entered into an agreement with Gonsalves-Pastore, a real estate brokerage firm, entitled "Independent Contractor Agreement." The agreement stated:

> "The parties to this Agreement intend that [Ms. Glynn] be an independent contractor, and not an employee of [Gonsalves-Pastore], so that [Ms. Glynn] retains absolute discretion and judgment in the way in which [she] carries out listing and selling activities, but [she] agrees to carry out those activities according to the policies and procedures of [Gonsalves-Pastore]."

The agreement also provided that Gonsavles-Pastore would make available to Ms. Glynn all of its information regarding current listings and potential clients, as well as the use of its facilities and supplies. However, according to the agreement, Ms. Glynn remained responsible for her own expenses such as the cost of her real estate license and other professional dues. The agreement further provided that Ms. Glynn could work any hours that she chose from either her home or the Gonsalves-Pastore office; and it also provided that she was free to accept outside employment. The parties also agreed to split all commissions earned as a result of services performed by Ms. Glynn in "the sale, lease, or exchange of real property * * *."

In 2014, plaintiff, a resident of Australia, entered into an agreement with Ms. Glynn "to assist [him] in the purchase, rehabilitation, restoration, management, rental and sale of real estate in Providence County for investment purposes." In furtherance of this agreement, on October 21,

2014, Ms. Glynn formed Sunflower Real Estate, LLC (Sunflower) and served as Sunflower's sole member. Nevertheless, plaintiff provided all funding for the investment projects undertaken by Sunflower. In return for her services, Ms. Glynn was to be compensated, at least in part, through the commissions she earned on real estate transactions associated with the investment projects.

During the relevant time period, Kim Ziegelmayer acted as plaintiff's agent "for purposes of implementing [his] plan to invest in real property in Rhode Island." Ms. Ziegelmayer also acted as plaintiff's primary contact with Ms. Glynn and Gonsalves-Pastore. According to the affidavits of both plaintiff and Ms. Ziegelmayer, Ms. Glynn's association with Gonsalves-Pastore was very important to plaintiff's investment plan.

Ms. Ziegelmayer stated in her affidavit that, between October of 2014 and August of 2017, she met with Ms. Glynn at the Gonsalves-Pastore office at least twenty times to discuss investment opportunities for plaintiff and that she and Ms. Glynn attended scheduled meetings with Robin Pastore, a principal of Gonsalves-Pastore, on two different occasions. According to Ms. Ziegelmayer, during a meeting on October 30, 2014, Ms. Pastore was informed of plaintiff's investment plan as well as the fact that, because of Ms. Glynn's association with Gonsalves-Pastore, "Gonsalves-Pastore would receive the standard portion of the commission from any Sunflower transaction." Ms. Ziegelmayer further stated that, during a second meeting with Ms. Pastore, Ms. Pastore gave Ms. Ziegelmayer investment advice regarding a specific property located at 22 Countryside Drive in North Providence, Rhode Island (the North Providence Property).

On November 2, 2015, Sunflower purchased the North Providence Property through funds provided by plaintiff and subsequently sold it on August 11, 2017. Ms. Glynn earned a

commission from the sale of the North Providence Property, which she shared with Gonsalves-Pastore pursuant to their Independent Contractor Agreement.

According to an affidavit signed by plaintiff, upon the sale of the North Providence Property, he discovered that Ms. Glynn, through her position as the sole member of Sunflower, had granted two mortgages on said property in the amounts of $180,000 and $200,000 without authorization from plaintiff. The plaintiff further stated that Ms. Glynn used the funds "in contravention of the investment plan to which Glynn, Sunflower and Gonsalves-Pastore were participants."

On December 15, 2017, plaintiff commenced the present action against Ms. Glynn, Sunflower, and Gonsalves-Pastore. On March 14, 2018, plaintiff filed an amended complaint containing eight counts. However, the amended complaint contained only one count against Gonsalves-Pastore, which sounded in negligence.[3] Specifically, plaintiff alleged that "Gonsalves-Pastore, as Glynn's employer or principal, owed a fiduciary duty to the Plaintiff as the principal to oversee and supervise Glynn such that Glynn was acting honestly, prudently, loyally and in the best interests of the Plaintiff and that no loss would occur to the Plaintiff * * *." The plaintiff also alleged that Gonsalves-Pastore breached said duty, which resulted in damage to plaintiff.

On July 13, 2018, Gonsalves-Pastore filed a motion for summary judgment, asserting that, as a matter of law, Gonsalves-Pastore did not owe a duty to plaintiff, either directly or as a result of its relationship with Ms. Glynn, to supervise Ms. Glynn's activities relating to Sunflower.

---

[3] The remaining seven counts pertained only to Ms. Glynn and Sunflower and consisted of counts alleging: (1) breach of contract; (2) fraud; (3) breach of fiduciary duty; (4) breach of duty of good faith and fair dealing; (5) conversion; (6) negligence; and (7) fraudulent conveyance. On January 17, 2020, a consent order between plaintiff, Ms. Glynn, and Sunflower entered, granting summary judgment in favor of plaintiff as to plaintiff's claims for breach of contract, fraud, and breach of fiduciary duty.

Specifically, Gonsalves-Pastore argued that it was not liable for Ms. Glynn's actions because she was an independent contractor and that, even if she were an employee, her acts of alleged malfeasance were outside the scope of her employment. In opposition to Gonsalves-Pastore's motion, plaintiff argued that Gonsalves-Pastore owed plaintiff a duty based on a fiduciary relationship. The plaintiff also argued that a genuine issue of material fact remained as to whether Ms. Glynn was an independent contractor. Lastly, plaintiff argued that summary judgment would be inappropriate because there had not been a reasonable period of time for the conducting of discovery.

On October 31, 2018, the hearing justice heard oral argument regarding Gonsalves-Pastore's motion for summary judgment. At the hearing, counsel for plaintiff asserted that the record was incomplete because each of the defendants had inadequately responded to plaintiff's requests for production of documents and interrogatories. However, counsel admitted that, as of that point in time, he had not filed a motion to compel. The hearing justice then inquired whether counsel was making an argument pursuant to Rule 56(f) of the Superior Court Rules of Civil Procedure. In response, counsel stated:

> "I didn't file a Rule 56(f) affidavit because we had sufficient information, we thought, from Mr. Poletti and Ms. Ziegelmayer to, you know, make a factual defense to this, particularly based on the test that we have put forward. So, yes, I mean, you could put it that way, it could be a Rule 56(f)."

The record indicates that plaintiff never filed a motion to compel or a Rule 56(f) affidavit.

The hearing justice rendered a bench decision on November 14, 2018, in which she granted Gonsalves-Pastore's motion for summary judgment. Relying upon this Court's decision in *Pineda v. Chase Bank, USA, N.A.*, 186 A.3d 1054 (R.I. 2018), the hearing justice concluded that "[t]here [were] no facts in the record to demonstrate that Ms. Glynn's alleged malfeasance was actuated by

a purpose to serve Gonsalves-Pastore Realty." She went on to state that there was no "genuine issue of material fact in dispute as to whether a fiduciary relationship existed between Gonsalves-Pastore Realty and Mr. Poletti." The hearing justice reasoned that, although Mr. Poletti and Ms. Ziegelmayer subjectively relied upon Gonsalves-Pastore and Ms. Ziegelmayer met with Ms. Pastore on a few occasions, "there [were] no facts in the record to indicate that this relationship was an unusual real estate broker-client relationship that went far beyond that found in an ordinary business transaction between real estate clients and their brokers."

On December 18, 2018, an order entered reflecting the hearing justice's decision. On the same date, an order entered granting Gonsalves-Pastore's motion for entry of final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, and final judgment entered on December 21, 2018. The plaintiff timely appealed.[4]

## II

## Standard of Review

We review "a hearing justice's grant of a motion for summary judgment *de novo*." *Bruce Pollak v. 217 Indian Avenue, LLC*, 222 A.3d 478, 481 (R.I. 2019). Accordingly, "[i]f we conclude, after viewing the evidence in the light most favorable to the nonmoving party, that there is no genuine issue of material fact to be decided and that the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *McGovern v. Bank of America, N.A.*, 91 A.3d 853, 857 (R.I. 2014) (internal quotation marks omitted). It is incumbent upon the nonmoving party to "prov[e] by competent evidence the existence of a disputed issue of material

---

[4] The plaintiff filed separate notices of appeal from the December 18, 2018 order and the December 21, 2018 final judgment. On November 13, 2019, an order of this Court entered consolidating both appeals for the purposes of briefing and argument.

fact and [said party] cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Pineda*, 186 A.3d at 1057 (internal quotation marks omitted).

## III

## Analysis

The plaintiff's primary arguments on appeal are to the effect that: (1) the hearing justice erroneously determined that no genuine issue of material fact remained as to whether or not a fiduciary relationship existed between plaintiff and Gonsalves-Pastore; and (2) the hearing justice erroneously determined that no genuine issue of material fact remained as to whether Gonsalves-Pastore was liable as Ms. Glynn's employer. We will address each in turn.

## A

### Duty Based on a Fiduciary Relationship

A fiduciary duty "is one of trust and confidence and imposes the duty on the fiduciary to act with the utmost good faith." *Notarantonio v. Notarantonio*, 941 A.2d 138, 145 (R.I. 2008) (internal quotation marks omitted). "This Court has acknowledged that a fiduciary relationship can arise either by virtue of a strong personal or familial relationship of trust or by formal relationships * * *." *In re Estate of Ross*, 131 A.3d 158, 167 (R.I. 2016). While this Court has refrained from establishing a hard-and-fast rule as to when a fiduciary relationship arises, such an inquiry may involve "a variety of factors, including the reliance of one party upon the other, the relationship of the parties prior to the incidents complained of, the relative business capacities or lack thereof between the parties, and the readiness of one party to follow the other's guidance in complicated transactions." *Simpson v. Dailey*, 496 A.2d 126, 129 (R.I. 1985).

On appeal, plaintiff argues that the hearing justice erred in determining that no genuine issue of material fact remained as to whether or not a fiduciary relationship existed between

- 7 -

plaintiff and Gonsalves-Pastore because plaintiff "reposed his trust and confidence in Gonsalves-Pastore and Glynn, not only to market certain properties for sale, but to carry out [his] business plan for his benefit." He also argues that the parties' relationship went far beyond an ordinary business transaction because he relied upon Ms. Pastore's expertise and advice in his investment decisions.

We perceive no error in the hearing justice's conclusion that Gonsalves-Pastore did not owe plaintiff a fiduciary duty. There is no evidence in the record that plaintiff had any formal or informal agreement with Gonsalves-Pastore to carry out his investment plan. According to the record, plaintiff engaged Ms. Glynn, acting through Sunflower, to carry out his investment plan. With respect to Gonsalves-Pastore, its role was limited to acting as the real estate brokerage firm associated with Ms. Glynn in her capacity as a licensed real estate agent. Gonsalves-Pastore was not responsible for carrying out any of plaintiff's investment plans. Although Ms. Ziegelmayer stated that she and plaintiff relied upon Ms. Pastore's investment advice on two occasions, relying upon another's advice, without more, is not sufficient to establish a fiduciary relationship. Therefore, we hold that the hearing justice did not err in determining that no genuine issue of material fact existed as to whether or not Gonsalves-Pastore owed plaintiff a fiduciary duty.

**B**

**Duty Based on an Employment Relationship**

It is well-established that "[a]n agency relationship exists when three elements coalesce: (1) the principal must manifest that the agent will act for him, (2) the agent must accept the undertaking, and (3) the parties must agree that the principal will be in control of the undertaking." *Cayer v. Cox Rhode Island Telecom, LLC*, 85 A.3d 1140, 1143 (R.I. 2014) (internal quotation marks omitted). If such an agency relationship exists in the employment context, "an employer

will incur vicarious liability for its employee's negligent act if that act is committed within the scope of the latter's employment." *Id.* at 1143-44. This Court has applied the four-element test outlined in the Restatement (Second) *Agency*, which provides:

> "Conduct of a servant is within the scope of employment if, but only if:
>
> > "(a) it is of the kind he is employed to perform;
> >
> > "(b) it occurs substantially within the authorized time and space limits;
> >
> > "(c) it is actuated, at least in part, by a purpose to serve the master, and
> >
> > "(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." Restatement (Second) *Agency* § 228(1) at 504 (1958); *see Pineda*, 186 A.3d at 1058-59.

However, a contractor is generally not liable for the negligent acts of an independent contractor. *Cayer*, 85 A.3d at 1144.

In the case at bar, we note that the hearing justice did not make a determination as to whether Ms. Glynn was an agent or employee of Gonsalves-Pastore. Instead, it is clear that she determined that, even if Ms. Glynn were an employee, Gonsalves-Pastore would not be liable for Ms. Glynn's alleged acts of malfeasance because the acts did not fall within the scope of her employment. For the purposes of this appeal, we similarly will assume without deciding that Ms. Glynn was an employee of Gonsalves-Pastore and will proceed to address whether or not a genuine issue of material fact remained as to whether her acts of malfeasance were committed within the scope of any such employment.

The plaintiff argues that the hearing justice erroneously determined that Ms. Glynn's actions were not actuated, at least in part, to benefit Gonsalves-Pastore because Gonsalves-Pastore

- 9 -

received a commission from the sale of the North Providence Property and Ms. Glynn's actions occurred while she was an agent of Gonsalves-Pastore.[5]

In our view, this case involves a fact pattern that is conceptually similar to that which was before us in *Pineda*. *See Pineda*, 186 A.3d at 1055-60. In that case, an attorney acting as the settlement agent in connection with loan refinancing proceedings between the plaintiff and the defendant "defalcated funds disbursed by [the defendant] that were intended to satisfy promissory notes secured by mortgages on [the plaintiff]'s two properties." *Id.* at 1055. The Court focused on the attorney's motivation for defalcating the funds and determined that no genuine issue of fact existed as to whether or not he acted with a purpose to serve the defendant because the actions differed significantly from the acts authorized and the defendant received no benefit. *Id.* at 1059.

According to the Independent Contractor Agreement between Gonsalves-Pastore, a real estate brokerage firm, and Ms. Glynn, a licensed real estate agent, their business relationship involved only "the sale, lease, or exchange of real property * * *." Thus, Ms. Glynn's alleged acts of malfeasance—namely, granting two mortgages on property purchased by Sunflower in furtherance of plaintiff's investment plan and using the resulting funds in contravention of said plan—were not authorized by Gonsalves-Pastore. Moreover, there is no evidence that Gonsalves-

---

[5]     Additionally, plaintiff urges this Court to adopt an exception to the general agency rule, which exception is alluded to in the opinion of the United States Supreme Court in *Vance v. Ball State University*, 570 U.S. 421 (2013), which held, in the context of a Title VII case, that in some circumstances an employer may be liable for an employee's acts performed outside the scope of his or her employment when the employee was aided in accomplishing said acts by the existence of the agency relationship. *See Vance*, 570 U.S. at 428. Even if that case is applicable outside of the Title VII context, an issue about which we express no opinion, plaintiff does not provide any developed argument as to how any alleged agency relationship aided Ms. Glynn in accomplishing her acts of alleged malfeasance. Thus, we consider the issue waived. *See Broccoli v. Manning*, 208 A.3d 1146, 1149 (R.I. 2019) ("This Court generally deems an issue waived when a party simply states an issue for appellate review, without a meaningful discussion thereof.") (internal quotation marks omitted).

Pastore benefited from the funds obtained through the two mortgages. The fact that Gonsalves-Pastore earned a portion of the commission from the sale of the North Providence Property is irrelevant, as Ms. Glynn's allegedly wrongful acts did not aid in the sale of the property. Therefore, we hold that the hearing justice did not err in concluding that no genuine issue of material fact existed as to whether or not Gonsalves-Pastore was liable for Ms. Glynn's alleged acts of malfeasance and that, therefore, summary judgment was appropriate.[6]

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to that tribunal.

Justice Indeglia did not participate and retired before publication.

---

[6]     The plaintiff also argues that the hearing justice should have allowed more time for discovery under Rule 56(f) of the Superior Court Rules of Civil Procedure before ruling on Gonsalves-Pastore's motion for summary judgment. However, he did not file a Rule 56(f) affidavit, nor did he file a motion for a continuance. Thus, we decline to address this issue on appeal. *See Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 604 n.10 (R.I. 2019) (declining to address the issue of whether the hearing justice should have granted more time for discovery under Rule 56(f) because the "plaintiff neither moved for a continuance nor submitted an affidavit 'stating why he * * * cannot present facts in opposition to the motion'") (quoting *Berard v. HCP, Inc.*, 64 A.3d 1215, 1220 (R.I. 2013) ("[Rule 56(f)] clearly mandates that the party opposing the motion for summary judgment file affidavits stating why he or she cannot present facts in opposition to the motion.") (internal quotation marks omitted)).

- 11 -



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Mauro Poletti v. Linda L. Glynn, alias, individually and as Trustee of the Linda L. Glynn Revocable Trust Agreement dated January 14, 2016, et al. |
| **Case Number** | No. 2019-109-Appeal.<br>No. 2019-111-Appeal.<br>(PC 17-6074) |
| **Date Opinion Filed** | July 1, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa A. Long |
| **Attorney(s) on Appeal** | For the Plaintiff:<br><br>W. Mark Russo, Esq.<br>Matthew John Pimentel, Esq. |
| | For the Defendant:<br><br>Matthew T. Oliverio, Esq.<br>Thomas J. Cronin, Esq.<br>Santiago H. Posas, Esq. |